**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**ERNEST G. PELLEGRINO,**

                Petitioner,           05 Civ. 6909 (JGK)

    - against -                       **OPINION & ORDER**

**ALLEN AUERBACH, individually and as**
**Trustee of DR. ALLEN AUERBACH DO PA 401K**
**PROFIT SHARING PLAN DATED 01/01/03,**

                Respondent.

————————————————————————

**JOHN G. KOELTL, District Judge:**

    The petitioner, Ernest G. Pellegrino ("Pellegrino"), filed a petition, pursuant to section 7503(b) of the New York Civil Practice Law and Rules ("CPLR"), seeking to stay an arbitration before the National Association of Securities Dealers ("NASD"). The arbitration was brought by the respondent, Allen Auerbach ("Auerbach"), in his individual capacity and as Trustee of the Dr. Allen Auerbach DO PA 401K profit sharing plan dated January 1, 2003. The NASD arbitration concerns allegations that Pellegrino, together with his former firm, Coleman and Company Securities, Inc. ("Coleman"), and others, defrauded Auerbach by engaging in a securities fraud scheme and by churning Auerbach's accounts.

    Pellegrino filed his petition in the New York State Supreme Court, New York County, seeking to stay the arbitration on the

1

grounds that the claims asserted against him in the arbitration are based only on negligence, and are therefore barred by the three-year New York statute of limitations. Section 7502(b) of the CPLR provides that a party may obtain an order staying arbitration, pursuant to Section 7503(b) if the claim asserted would have been time-barred if brought in the state courts. N.Y. C.P.L.R. §§ 7502(b), 7503(b). Auerbach removed the case to this Court pursuant to 28 U.S.C. § 1441 based on diversity of citizenship jurisdiction.

In opposition to the petition to stay arbitration, Auerbach responds that the issue of the statute of limitations should be for the arbitrators to decide, not for the Court. Alternatively, he argues that even if the Court were to decide the statute of limitations issues, the claims alleged are nonetheless timely. For the reasons explained below, the Court agrees with the respondent's argument that, under the facts of this case, the issue of the statute of limitations is for the arbitrators to decide. Pellegrino's petition to stay the arbitration is therefore denied.

**I.**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., which the parties agree applies in this case, federal courts are to determine "two issues: i) whether a valid

agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected, or refused to arbitrate." PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996). It has long been settled that arbitration is a matter of contract; a party cannot be compelled to submit to arbitration any matter that party has not agreed to arbitrate. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Whether a valid agreement exists to submit certain issues to binding arbitration, including the question of who should determine the arbitrability of those issues, is determined by state law principles governing the formation of contracts. Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) (citing First Options of Chicago, 514 U.S. at 944); see also Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002).

Under the FAA certain presumptions aid the analysis. For example, once it has been determined that a valid agreement to arbitrate exists, "the federal policy in favor of arbitration requires that 'any doubts concerning the scope of arbitrable issues' be resolved in favor of arbitration." Shaw Group, 322 F.3d at 120 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

On the other hand, because an arbitrator's jurisdiction is contingent upon the consent of the parties, a presumption

favoring judicial rather than arbitral resolution is applied where there is doubt about who should decide whether an issue is subject to arbitration.  Id. at 120.  This is because "reference of the gateway dispute to the court avoids the risk of forcing the parties to arbitrate a matter that they may well not have agreed to arbitrate."  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84 (2002); see also First Options of Chicago, 514 U.S. at 943-46.   As a result, "the issue of arbitrability may only be referred to the arbitrator if 'there is "clear and unmistakable" evidence from the arbitration agreement ... that the parties intended that the question of arbitrability be decided by the arbitrator.'"  Shaw Group, 322 F.3d at 121 (quoting Bell v. Cendant Corp., 293 F.3d at 566 (emphasis in original) (internal citations omitted)).  New York law recognizes the same principles.  Id. (citing Smith Barney Shearson Inc. v. Sacharow, 689 N.E.2d 884, 887 (N.Y. 1997)).

Whether a dispute concerns an issue of arbitrability subject to the presumption in favor of judicial resolution can be difficult to discern.  The United States Court of Appeals for the Second Circuit has treated the particular issue in this case, whether the statute of limitations under state law precludes arbitration of certain claims, as such an issue of arbitrability.  See Bybyk, 81 F.3d at 1198-99.  The decision of the Court of Appeals on this question in Bybyk, however, is

undermined by the Supreme Court's later decision in Howsam, which held that the applicability of an NASD rule barring arbitration more than six years after the events giving rise to the dispute was presumptively for the arbitrator, rather than the court, to decide. Howsam, 537 U.S. at 84-85. The Court in Howsam distinguished between two types of disputes. The first type, characterized as "gateway disputes about whether the parties are bound by a given arbitration clause," such as whether a non-signatory was bound by an arbitration agreement or whether an arbitration agreement survived a corporate merger, are subject to the FAA's presumption in favor of judicial resolution. Id. at 84. On the other hand, the second group, characterized by the Supreme Court as "'procedural' questions which grow out of the dispute and bear on its final disposition," are presumptively for the arbitrator to decide. Id. (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47 (1964)). Howsam further indicated that the question at issue in that case, one of time limits under the NASD's arbitration rules, fell into the latter category along with such issues as "'waiver, delay, or a like defense'" to arbitrability that had previously been held to be "presumptively for the arbitrator, not for the judge." Id. at 84-85 (quoting Moses H. Cone, 460 U.S. at 24-25).

5

The New York Court of Appeals has cited Howsam as establishing that, under the FAA, a dispute over a New York state statute of limitations is presumptively for the arbitrator, with an exception where the parties "explicitly agree to leave timeliness issues to the court." Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp., 826 N.E.2d 802, 804, 805-06 (N.Y. 2005). Howsam rested in part, however, on the likely expectations of the parties and on the perceived expertise of the NASD arbitrators in interpreting an NASD arbitration rule. See Howsam, 537 U.S. at 85. Meanwhile, Shaw Group applied the presumption in favor of court resolution of issues of arbitrability, as established in Bybyk, without citing Howsam. See Shaw Group, 322 F.3d at 121-22; see also HD Brous & Co., Inc. v. Mrzyglocki, No. 03 Civ. 8385 (CSH), 2004 WL 376555 at *10 (S.D.N.Y. Feb. 26, 2004) (citing Howsam and Bybyk and finding that the arbitrability of a statute of limitations defense is presumptively for the court).

This Court need not resolve, however, the extent to which Howsam overruled Bybyk on this point; even applying the presumption in favor of judicial resolution, under New York contract law, the parties "clearly and unmistakably" agreed to submit questions such as the applicability of the statute of limitations to the arbitrator. Shaw Group, 322 F.3d at 121 (internal quotations omitted). It necessarily follows that the

Court would reach the same conclusion if it were to apply a presumption in favor of, rather than against, the submission of such questions to the arbitrator.

**II.**

Under New York law, certain principles exist to guide courts in the interpretation of contracts, including agreements to arbitrate. Thus, "(1) '[i]n interpreting a contract, the intent of the parties governs;' (2) '[a] contract should be construed so as to give full meaning and effect to all of its provisions;' (3) words and phrases in a contract should be 'given their plain meaning;' and (4) ambiguous language should be construed against the interest of the drafting party." Id. (quoting Bybyk, 81 F.3d at 1199). Applying these principles to the agreement between Pellegrino and Auerbach, the Court concludes that the parties intended that questions of arbitrability, including statute of limitations issues, be decided by arbitrators.

First, the agreement contains a broad grant of power referring "all controversies which may arise between [the parties] concerning any transaction or the construction, performance or breach of this or any other agreement between [the parties]" to arbitration. (Opening Cash Agreement, Ex. 1 to Resp'ts' Mem. of Law in Opp'n to Pet'r's Pet. to Stay

Arbitration Pursuant to CPLR §§ 7502(b) and 7503(b) (the "Agreement"), ¶ 12). The New York Court of Appeals has held that where such a broad grant of power to the arbitrator is found, "in the absence of more critical language concerning enforcement, ... all controversies, including issues of timeliness, are subjects for arbitration." See Diamond Waterproofing, 826 N.E.2d at 806; see also Sacharow, 689 N.E.2d at 887-88 (holding that a contract provision that "[a]ny controversy ... shall be settled by arbitration" constituted a clear and unambiguous statement by the parties to refer timeliness issues to arbitration).

The Second Circuit Court of Appeals and courts in this district have likewise held that near identical language contained in other agreements indicated that the parties intended to submit all questions of arbitrability, defined to include timeliness, to arbitration. See Shaw Group, 322 F.3d at 121 (noting that a broad grant of power to the arbitrators evinces an intent to arbitrate issues of arbitrability); see also Bybyk, 81 F.3d at 1199-1200 (finding that issues of timeliness were to be arbitrated because "[t]he parties' broad grant of power to the arbitrators is unqualified by any language carving out substantive eligibility issues"); Mrzyglocki, 2004 WL 376555 at *9-10 (finding that a statute of limitations defense was covered by "a classic example of a broad-form

8

arbitration agreement" similar to the one in this case); <u>Unis Group, Inc. v. Compagnie Financière de CIC et de l'Union Européenne</u>, No. 00 Civ. 1653, 2001 WL 487427 at *1 (S.D.N.Y. May 7, 2001) (noting that a broad arbitration clause required submission of a timeliness defense to arbitration).

Second, the parties' intent to arbitrate questions of arbitrability is further evidenced by their agreement to "settle[ ] by arbitration before either the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. or any other self-regulatory organization of which you [the broker] or your clearing firm is a member, under the then existing arbitration procedures of the forum ... elected." (Agreement, ¶ 12.) The most obvious meaning of this provision is that the procedures of the forum selected (in this case the NASD), not the laws of New York, govern whether arbitrators are to decide issues of arbitrability. Here, the arbitration is pending in the NASD. As the Court of Appeals noted in <u>Shaw Group</u>, an agreement to have all disputes resolved under the rules of the arbitral forum has been held by both federal and state courts in New York to evidence the parties' agreement to submit questions of arbitrability to the arbitrator. See <u>Shaw Group</u>, 322 F.3d at 122-23 (citing <u>Bybyk</u>, 81 F.3d at 1202, and <u>Sacharow</u>, 684 N.E.2d at 888).

Pellegrino contends that the inclusion of two choice of law provisions in the agreement precludes a finding that the parties intended to submit statute of limitations issues to arbitration. Pellegrino cites Coleman & Company Securities, Inc. v. Giaquinto Family Trust, No. 00 Civ. 1632 (DC), 2000 WL 1683450 (S.D.N.Y. Nov. 8, 2000), summary judgment granted by 236 F. Supp. 2d 288 (S.D.N.Y. 2002), to support his argument. That case, however, is distinguishable.

In Giaquinto, the respondents had commenced an arbitration proceeding against several parties before the NASD, arising out of trading in the repondents' accounts. Id. at *1. One adversary in the arbitration sought a permanent stay of the arbitration on the grounds that the claims contained therein were barred by the applicable statutes of limitations. Id. As here, the issue before the district court was whether the defense of the statute of limitations should be decided by the court or by the arbitrators. Id. at *2. In concluding that the court should decide the issue of the statute of limitations defense, Judge Chin based his ruling on a careful examination of the specific language contained in the agreements between the parties and on principles of contract construction.

The agreement in Giaquinto contained two choice of law provisions. The first was a general provision, not contained in the arbitration section of the agreement, which stated, "[t]his

10

agreement and its enforcement shall be governed by the laws of the State of New York and its provisions shall be continuous." Id. at *1. Judge Chin noted that where a general New York choice of law provision exists in an agreement that contains a separate arbitration clause, the general choice of law provision incorporates only the "substantive principles that New York courts would apply, but not ... special rules limiting the authority of arbitrators" such as CPLR Section 7502(b). Id. at *3 (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995); Bybyk, 81 F.3d at 1200 (quoting same)). Judge Chin therefore rejected the argument that the petitioners could rely upon this general choice of law provision to argue that the parties intended to be bound by New York's substantive rule limiting the authority of arbitrators to decide statute of limitations issues. Id.

The second choice of law provision was in the arbitration clause itself and provided that "[a]ny arbitration under this agreement shall be conducted pursuant to the Federal Arbitration Act ["FAA"] and the laws of the State of New York." Id. (emphasis added). This provision therefore clearly selected both the FAA and New York law to govern the arbitration itself. Judge Chin concluded that "the only reasonable reading of the parties' agreement is that the parties intended to be bound by New York's arbitration rules, including the rule limiting the

power of the arbitrators to hear preliminary questions of timeliness." Id. at 4.

The agreement before this Court likewise contains two choice of law provisions – one a general choice of law provision, and the other contained in the arbitration clause. (Agreement, ¶¶ 10, 12.)  As in Giaquinto, the general choice of law provision does not express the parties' intent that New York's substantive rules limiting the authority of arbitrators to decide statute of limitations defenses apply. See id. at *9. Therefore, this Court must determine whether the second choice of law provision in this agreement requires the application of New York law to the issue of arbitrability.

Pellegrino interprets Giaquinto as applying CPLR § 7502(b) to any agreement containing two choice of law provisions, regardless of the language used in the agreement.  That reading is overly broad.  The mere fact that there are two choice of law provisions contained in an agreement is not dispositive of the issue of whether New York rules regarding arbitrability apply, as evidenced by the decision of the Second Circuit Court of Appeals in Shaw Group.

The agreement in Shaw Group contained two choice of law provisions with language nearly identical to that used in the agreement in this case.  Specifically, the contract in Shaw Group contained a general choice of law provision providing that

12

> This Agreement shall be deemed to have been
> executed and delivered in New York, New York,
> and shall be interpreted and construed in
> accordance with the laws of New York, U.S.A.

Shaw Group, 322 F.3d at 123.

The second choice of law clause in Shaw Group, located, as here, in the arbitration clause, provided that

> [a]ll disputes between you . . . and us . . .
> concerning or arising out of this Agreement
> shall be referred to arbitration to the
> International Chamber of Commerce, New York,
> New York, in accordance with the rules and
> procedures of International Arbitration.
> This Agreement and the rights and obligations
> of the parties shall be construed in
> accordance with and governed by the laws of
> New York.

Id. at 120.

The Appellees in Shaw Group argued, as Pellegrino does here, that the choice of law provision found within the arbitration clause would be rendered superfluous if not read to require the application of New York law with respect to arbitrability. Id. at 123. The Court of Appeals, however, rejected this argument for several reasons.

The Court of Appeals noted that (unlike in Giaquinto) the language in the second choice of law clause "nowhere provides for New York law to govern the 'enforcement' of the parties' contract. It invokes New York law only to assist in construing the agreement and the parties' rights and obligations thereunder, subjects for state contract, not arbitration, law."

13

Id. at 123. Therefore the inclusion of two choice of law provisions was not dispositive of the parties' intent to constrain the powers of the arbitrator to resolve all disputes between the parties. Rather, the language was merely duplicative and was evidence of careless drafting. Id. at 124.

While mindful of the canon against construing a contract in a way that renders at least one clause meaningless, the Court of Appeals noted that the two provisions contained identical phrasing and indicated that it would "strain language beyond its reasonable and ordinary meaning" to interpret the "boilerplate language" in the second provision as "an intent to constrain the broad powers conferred on the arbitrator to resolve 'all disputes' between the parties...." Id.

The language in the agreement before this Court is more akin to the contractual language in Shaw Group than that in Giaquinto. The relevant portion of the second choice of law provision in the agreement states:

> "This contract shall be governed by the laws of the State of New York, and shall inure to the benefit of your successors and assigns, and shall be binding on the undersigned, my heirs, executors, representatives, attorneys-in-fact, administrators and assigns. Any controversy arising out of or relating to my account . . . shall be settled by arbitration before either the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. or any other self-regulatory organization of which you [Pellegrino] or your clearing firm is a member, as I [Auerbach] may

> elect and under the then existing arbitration procedures of the forum I have elected."

(Agreement, ¶ 12.)

Like the language in Shaw Group, this language states only that the contract is to be governed by the substantive law of New York, while the arbitration is to be conducted pursuant to the rules of the arbitral body selected. Unlike in Giaquinto, where the parties expressly provided for the "arbitration" to be "conducted pursuant to the Federal Arbitration Act and the laws of the State of New York," Giaquinto, 2000 WL 1683450 at *3, the contract at issue in this case contains no provision specifically applying New York law to procedural questions relating to the arbitration. Indeed, the New York Court of Appeals has found CPLR Section 7502(b) inapplicable where the contract contains a choice of law provision that does not specifically provide that New York law shall govern the enforcement of the contract, or otherwise reference New York law limiting the power of arbitrators. See Diamond Waterproofing, 826 N.E.2d at 806; see also Sacharow, 689 N.E.2d at 889 (both distinguishing Matter of Smith Barney, Harris Upham & Co. v. Luckie, 647 N.E.2d 1308 (N.Y. 1995), on the ground that the contract in Luckie specifically applied New York law to the enforcement of the contract). Giaquinto is therefore distinguishable.

The Court is mindful that in interpreting the agreement, it should give "full meaning and effect to all of its provisions." Shaw Group, 322 F.3d at 124. As in Shaw Group, however, the Court cannot read the second choice of law provision to undo the broad conferral of power on the arbitrator, in the same paragraph, to determine "all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof...," (Agreement, ¶ 12), without "strain[ing] language beyond its reasonable and ordinary meaning. Shaw Group, 322 F.3d at 124. The Court therefore concludes that, as the Court of Appeals held with respect to the contract in Shaw Group, "the agreement clearly and unmistakably evidences the parties' intent to arbitrate questions of arbitrability." Id. at 125.

## III.

Because the Court concludes that the parties left the issue of statute of limitations for the arbitrators to decide, the Court does not reach the substantive questions of which statute of limitations applies, and whether it expired prior to the filing of the claims at the NASD.

16

## CONCLUSION

For the reasons explained above, Pellegrino's petition to stay the arbitration before the NASD is **denied**. The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**March 7, 2006**

John G. Koeltl
United States District Judge